**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee*,

v.

SAMIR BENAMOR,
      *Defendant-Appellant.*

No. 17-50308

D.C. No.
2:16-cr-00461-SJO-1

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted April 10, 2019
Pasadena, California

Filed June 6, 2019
Amended September 5, 2019

Before: Susan P. Graber and Jay S. Bybee, Circuit Judges,
and M. Douglas Harpool,* District Judge.

Order;
Opinion by Judge Graber

---

   * The Honorable M. Douglas Harpool, United States District Judge for
the Western District of Missouri, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel filed an amended opinion affirming a conviction for knowingly possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1); denied a petition for panel rehearing; and denied on behalf of the court a petition for rehearing en banc.

The defendant argued that because firearms manufactured in or before 1898 do not qualify as "firearms" under § 922, the district court erred by refusing to instruct the jury that, to convict, they had to find that the defendant knew that his firearm was manufactured after 1898. The panel rejected that argument. The panel explained that *United States v. Aguilera-Rios*, 769 F.3d 626 (9th Cir. 2014) (concerning the categorical approach), does not override the line of cases holding that a firearm's antique status is an affirmative defense in a criminal prosecution; and that *Staples v. United States*, 511 U.S. 600 (1994) (concerning the National Firearms Act), does not help the defendant. The panel held that the defendant failed to meet his burden of production to put the "antique firearm" affirmative defense at issue, and rejected the defendant's sufficiency-of-the-evidence argument that rested on the same contention.

The panel reviewed for plain error the defendant's argument that, in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the evidence was insufficient to sustain his

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

conviction because the government failed to prove that he knew he was a felon. The panel held that the defendant's stipulation at trial – that, on the date when he was arrested in this case for possession of a shotgun, he had been convicted of a crime punishable by imprisonment for a term exceeding one year – was binding, and relieved the government of the burden to prove the defendant's status as a felon. The panel held that, assuming the stipulation does not end the discussion, there was no plain error. The panel explained that the absence of an instruction requiring the jury to find that the defendant knew he was a felon was clear error under *Rehaif*, but that there is no probability that, but for the error, the outcome of the proceeding would have been different. The panel wrote that, at a minimum, the prior convictions proved beyond a reasonable doubt that the defendant had the knowledge required by *Rehaif* and any error did not affect the defendant's substantial rights or the fairness, integrity, or public reputation of the trial.

The panel held that the admission of an ATF agent's testimony that his interview with the defendant's landlord confirmed the agent's decision to arrest the defendant for the firearm and ammunition violated the Confrontation Clause, but that the error was harmless beyond a reasonable doubt.

**COUNSEL**

Michael Tanaka (argued), Los Angeles, California, for Defendant-Appellant.

Matthew W. O'Brien (argued) and Consuelo S. Woodhead, Assistant United States Attorneys; L. Ashley Aull, Chief, Criminal Division; Nicola T. Hanna, United States Attorney, Los Angeles, California; for Plaintiff-Appellee.

**ORDER**

The opinion filed June 6, 2019, and published at 925 F.3d 1159, is amended by the opinion filed concurrently with this order.

With these amendments, the panel has voted to deny Appellant's petition for panel rehearing. Judges Graber and Bybee have voted to deny Appellant's petition for rehearing en banc, and Judge Harpool has so recommended.

The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on it.

Appellant's petition for panel rehearing and rehearing en banc is **DENIED**. No further petitions for panel rehearing or rehearing en banc will be entertained.

## OPINION

GRABER, Circuit Judge:

Defendant Samir Benamor appeals his conviction for knowingly possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). He possessed an old shotgun that might have been manufactured as early as 1915. Because firearms manufactured in or before 1898 do not qualify as "firearms" under § 922, Defendant argues that the district court erred by refusing to instruct the jury that, to convict, they had to find that Defendant knew that his firearm was manufactured after 1898. Defendant also argues that his conviction cannot stand because the government did not prove his knowledge of his status as a felon. Finally, Defendant raises a Confrontation Clause challenge. We affirm.

## BACKGROUND

At the time of his arrest in this case, Defendant was a felon, and law enforcement had authority to conduct warrantless searches of his car and residence. After the local police department received tips that Defendant had engaged in illegal activity, two detectives, Anthony Chavez and Matthew Concannon, conducted surveillance outside the house in the garage of which Defendant resided. Concannon saw two vehicles, a Volvo and a minivan, parked in front of the house. Concannon also saw Defendant appear from the back of the property and walk to the street, where he opened the sliding door on the minivan's passenger side, climbed into the driver's seat, and moved the van a short distance down the road. Defendant left the van through the same door and

returned to the house. At that point, Concannon ran the van's license plate and learned that it was Defendant's.

Several minutes later, Concannon saw Defendant re-emerge from the back of the house, accompanied by a man named Angel Vasquez and an unidentified woman. All three individuals got into the Volvo and drove away. Chavez and Concannon then searched the garage. They found, among other things, keys to the minivan and an ammunition belt containing four shotgun rounds. Concannon used the keys to open the minivan's locked doors. Next to the sliding door that Defendant used to enter and exit the minivan, Concannon found a shotgun on the floor. The ammunition found in the garage did not match Defendant's shotgun.

Defendant's landlord arrived at the property during the search and confirmed that Defendant was the only person living in the garage. Because Defendant was a felon and because the detectives had found the ammunition and the shotgun, Chavez directed that Defendant be arrested. Officers arrested Defendant, Vasquez, and the unidentified woman that same day, and jailed Defendant. Four days later, while Chavez was transporting Defendant to a different jail, Defendant asked Chavez how much prison time he might serve. After Chavez responded, Defendant said that he had not intended to use the shotgun but, instead, wanted only to sell it or give it away.

Defendant went to trial on two counts of violating § 922(g)(1)—one for the shotgun and one for the ammunition. An agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") testified that the shotgun could not have been manufactured before 1915, given certain engravings on the gun. The agent also testified that the

shotgun's model and serial number indicated that it was likely manufactured in the 1920s. The government did not introduce any evidence that Defendant knew the gun's age. A different ATF agent, Daniel Thompson, testified about his interview of Defendant's landlord, who did not testify at trial. Other evidence established that, although only Defendant lived in the garage, the house's other occupants stored items there.

After the government rested, Defendant moved for acquittal. The district court denied his motion. The court also denied Defendant's request for an instruction that the government must prove that he knew that the shotgun was manufactured after 1898. The jury found Defendant guilty on the shotgun count but acquitted him on the ammunition count. Defendant then moved for a new trial, arguing that Thompson's testimony about his interview with the landlord violated the Confrontation Clause. The district court denied the motion.

## DISCUSSION

### A. *The "Antique Firearm" Exception*

Defendant argues that the district court should have instructed the jury that, to find Defendant guilty, they had to find that he *knew* that his firearm was manufactured after 1898. For the same reason, he argues that the government presented insufficient evidence to convict him. We review de novo "whether jury instructions omit or misstate elements of a statutory crime," and we review de novo the sufficiency of the evidence. *United States v. Kaplan*, 836 F.3d 1199, 1211, 1214 (9th Cir. 2016) (internal quotation marks and alteration omitted).

To convict someone under § 922(g)(1), the government must prove four elements: (1) the defendant was a felon; (2) the defendant knew he was a felon; (3) the defendant knowingly possessed a firearm or ammunition; and (4) the firearm or ammunition was in or affecting interstate commerce. *Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019);[1] *United States v. Nevils*, 598 F.3d 1158, 1163 (9th Cir. 2010) (en banc) (internal quotation marks omitted). We begin with Defendant's challenge to the third element. To prove that a defendant knowingly possessed a firearm, the government must "prove that the defendant consciously possessed what he knew to be a firearm." *United States v. Beasley*, 346 F.3d 930, 934 (9th Cir. 2003). "Firearm" has a broad definition, found in 18 U.S.C. § 921(a)(3). But § 921(a)(3) also carves out a narrow exception: "Such term does not include an antique firearm." An "antique firearm" is any firearm "manufactured in or before 1898." 18 U.S.C. § 921(a)(16)(A).

Although Defendant's shotgun was old, it was not "antique" within the statutory definition, because it was manufactured after 1898. Defendant does not dispute that his shotgun met § 921(a)(3)'s definition of a firearm. Yet he argues that the government was required to prove his knowledge that the shotgun lacked the antiquity that would have placed it beyond § 922(g)'s reach.

---

[1] Shortly after we filed the original opinion in this case, the Supreme Court decided *Rehaif*. *Rehaif* held that, in a prosecution under § 922(g), the government must prove not only that the defendant had a certain status—such as being a felon—that rendered his possession of a firearm unlawful, but also that the defendant *knew* that he had the relevant status. 139 S. Ct. at 2194. We address Defendant's *Rehaif*-based challenge to his conviction in the next section.

Every circuit to address the "antique firearm" exception in the criminal context has held that the exception is an affirmative defense to a § 922(g) prosecution, not an element of the crime. *See United States v. Royal*, 731 F.3d 333, 338 (4th Cir. 2013) (collecting cases); *Gil v. Holder*, 651 F.3d 1000, 1005 n.3 (9th Cir. 2011) (same), *overruled in part on other grounds by Moncrieffe v. Holder*, 569 U.S. 184 (2013). This uniform holding flows from "the longstanding principle that 'an indictment or other pleading founded on a general provision defining the elements of an offense need not negative the matter of an exception made by a proviso or other distinct clause.'" *Royal*, 731 F.3d at 338 (alteration omitted) (quoting *McKelvey v. United States*, 260 U.S. 353, 357 (1922)). Thus, because the "antique firearm" exception "stands alone as a separate sentence untethered to the general definition of 'firearm,'" courts consistently "place the burden on defendants to raise it as an affirmative defense." *Id.*

Defendant acknowledges the line of cases holding that a firearm's antique status is an affirmative defense, but he argues that *United States v. Aguilera-Rios*, 769 F.3d 626 (9th Cir. 2014), overrides those cases. There, we held that, after the Supreme Court's decision in *Moncrieffe*, the categorical approach requires courts to consider "a definitional element of a criminal offense, like the antique firearms exception." *Aguilera-Rios*, 769 F.3d at 635. But that "definitional element" label matters *only* in the context of the categorical approach, not in the context of a criminal prosecution. *See id.* at 636 (noting that, in some cases, "a conviction must necessarily establish the presence of certain factors that are *not* themselves elements of the crime" to qualify as a categorical match (emphasis added) (internal quotation marks omitted)). Our concern here is whether "the defendant bears the burden in a criminal trial" of proving that the firearm was

an antique, which is "irrelevant to the 'more focused, categorical inquiry.'" *Id.* (quoting *Moncrieffe*, 569 U.S. at 197). *Aguilera-Rios*' holding about how to conduct the categorical approach did not convert a firearm's age into a traditional element of a § 922(g) crime. *Aguilera-Rios* does not control here.

Defendant also argues that *Staples v. United States*, 511 U.S. 600 (1994), requires that the government prove his knowledge of every characteristic of his shotgun that made it incriminating, including its age. *Staples* addressed certain provisions of the National Firearms Act ("NFA"), which criminalizes possessing an unregistered or improperly registered firearm. *Id.* at 602. The NFA defines "firearm" to include a "machinegun," meaning "any weapon which shoots . . . or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(a)(6), (b). But "virtually any semiautomatic weapon may be converted, either by internal modification or, in some cases, simply by wear and tear, into a machinegun within the meaning of the Act." *Staples*, 511 U.S. at 602. The Court expressed concern that, in many cases, such "a gun may give no externally visible indication that it is fully automatic," rendering people vulnerable to imprisonment under the NFA "despite absolute ignorance" of a gun's automatic firing capabilities. *Id.* at 615. Thus, the Court read a mens rea requirement into the NFA and held that "the Government should have been required to prove that petitioner knew of the features of his [rifle] that brought it within the scope of the Act." *Id.* at 619.

*Staples* does not help Defendant. The characteristics of a "firearm" at issue in *Staples* were located in the general provision defining the term, not, as here, in a "'distinct

clause'" that stands alone as an exception "to the general definition of 'firearm.'" *Royal*, 731 F.3d at 338 (quoting *McKelvey*, 260 U.S. at 357). Thus, unlike the NFA, § 922(g) cannot be read "to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons." *Staples*, 511 U.S. at 620. Indisputably, Defendant's shotgun *was* a "firearm" under § 921(a)(3). And Defendant cannot reasonably dispute that he knew the shotgun "to be a firearm." *Beasley*, 346 F.3d at 934. Although he did not know the gun's age, he knew that the gun was a weapon "which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." § 921(a)(3).

That leaves Defendant with only the affirmative defense of the "antique firearm" exception on which to rely. Defendant had the burden of production to put that affirmative defense at issue. *Royal*, 731 F.3d at 338; *United States v. Cruz*, 554 F.3d 840, 850 n.16 (9th Cir. 2009). We need not, and do not, decide whether the affirmative defense is objective (meaning that the firearm's date of manufacture, alone, provides the answer) or subjective (meaning that a reasonable belief, even if mistaken, that the firearm was manufactured before 1899 could suffice). Either way, Defendant failed to meet his burden of production. He did not dispute the government's evidence that his gun could not have been manufactured before 1915, and he offered no evidence that he reasonably believed that the gun was manufactured before 1899.

Thus, the district court correctly declined to give Defendant's proposed jury instruction. Defendant's sufficiency-of-the-evidence argument rests entirely on the

argument that we have just rejected, so we also reject the sufficiency argument.

### B. *Defendant's Knowledge of His Status as a Felon*

After the Supreme Court decided *Rehaif*, Defendant filed a petition for rehearing, arguing that the evidence was insufficient to sustain his conviction because the government failed to prove that he knew he was a felon. We review for plain error when a sufficiency-of-the-evidence claim was not raised before the district court. *United States v. Flyer*, 633 F.3d 911, 917 (9th Cir. 2011). Defendant does not meet that stringent standard here.

Defendant stipulated at trial that, on the date when he was arrested in this case for possession of the shotgun, he had been convicted of a crime punishable by imprisonment for a term exceeding one year. That factual stipulation was binding, and it relieved the government of the burden to prove Defendant's status as a felon. *See Christian Legal Soc'y Chapter of Univ. of Cal. v. Martinez*, 561 U.S. 661, 677–78 (2010) (stating that factual stipulations "have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact" (internal quotation marks omitted)).

Assuming, however, that the stipulation does not end the discussion as to Defendant's *knowledge* of his status as a felon, there was no plain error. *See United States v. Olano*, 507 U.S. 725, 734, 736 (1993) (holding that, to establish plain error, a defendant must show: (1) an error (2) that was obvious and (3) that affected the defendant's substantial rights and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings). Here, the absence

of an instruction requiring the jury to find that Defendant knew he was a felon was clear error under *Rehaif*. *See Henderson v. United States*, 568 U.S. 266, 273 (2013) (holding that the first two elements of plain error are satisfied if the error is obvious when the case is on appeal); *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6, 328 (1987) (providing that Supreme Court decisions in criminal cases apply to all cases pending on direct review).

But the third and fourth prongs of the plain-error test are not met. Here, there is no probability that, but for the error, the outcome of the proceeding would have been different. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (articulating the standard of a "reasonable probability" of a different result). When Defendant possessed the shotgun, he had been convicted of seven felonies in California state court, including three felonies for which sentences of more than one year in prison were actually imposed on him. The felonies included one case in which Defendant sustained convictions for being *a felon in possession of a firearm* and *a felon in possession of ammunition*; he was sentenced to five years and eight months in prison. Defendant spent more than nine years in prison on his various felony convictions before his arrest for possessing the shotgun. At a minimum, the prior convictions for being a felon in possession of a firearm and being a felon in possession of ammunition proved beyond a reasonable doubt that Defendant had the knowledge required by *Rehaif* and that any error in not instructing the jury to make such a finding did not affect Defendant's substantial rights or the fairness, integrity, or public reputation of the trial.

C. *Confrontation Clause Issue*

After Defendant's arrest, Thompson interviewed Defendant's landlord, who told him that she had seen Defendant "with a very old or antique firearm." At trial, the government sought to introduce the landlord's statement through Thompson. The government gave advance notice of its intent, and Defendant objected to the testimony. He argued both that the testimony violated the Confrontation Clause and that the government's stated purpose for introducing the testimony was irrelevant. The district court sustained Defendant's objection: "The agent will not be able to testify that [the landlord] told the agent that she had seen the defendant with a very old long gun." When the government asked for clarification, the court said: "Well, the fact that there was an interview can be elicited. The substance of what was discussed at the interview, depending on what you intend to refer to, is probably prohibited."

Thompson testified later that morning. On redirect, the government asked him about Vasquez, the man who left the house with Defendant and was arrested with Defendant. Vasquez was also a felon at the time of the arrest. That line of questioning led to Thompson's interview with the landlord:

> Q: And then you interviewed the landlady, Ms. Ewen, on July 13th; is that right?
>
> A: That's correct.
>
> Q: And did your discussion with Ms. Ewen have any effect on your decision on whether to investigate Vasquez?

A: It did.

Q: Did your discussion with Ms. Ewen confirm your decision to arrest Mr. Benamor for the firearm and ammunition?

A: Yes, it did

Q: Did anything—without getting into the specifics about what Ms. Ewen told you, did anything from that interview cause you to suspect that Mr. Vasquez had anything to do with that shotgun?

A: No. To the contrary, it made me believe more that he did not.

Defendant did not object during the testimony. In its closing argument, the government brought up the landlord's statement again: "Special Agent Thompson testified that that interview with the landlady confirmed his suspicions, his knowledge, that it was defendant's gun and defendant's ammunition."

1. *Presence of Error*

We review de novo whether a Confrontation Clause violation occurred. *United States v. Tuyet Thi-Bach Nguyen*, 565 F.3d 668, 673 (9th Cir. 2009). The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36, 59 (2004), the Supreme Court held that this guarantee requires that a "testimonial" statement of a witness absent from trial

meet two conditions for admission: (1) the declarant must be unavailable at trial; and (2) the defendant must have had a prior opportunity to cross-examine the declarant. The government does not dispute that the landlord's statements were testimonial and did not meet *Crawford*'s requirements. But the government argues that no Confrontation Clause violation occurred because it offered a summation of her statements to show their effect on Thompson, not for the truth of the statements. We disagree.

The government's argument carries little weight for the following exchange:

> Q: Did your discussion with Ms. Ewen confirm your decision to arrest Mr. Benamor for the firearm and ammunition?
>
> A: Yes, it did.

In context, that answer implied that the landlord confirmed that Defendant possessed the shotgun and the ammunition. The government made that implication unmistakable during closing argument by again emphasizing the landlord's statement. If the government's argument prevailed here, then "every time a person says to the police 'X committed the crime,' the statement (including all corroborating details) would be admissible to show why the police investigated X. That would eviscerate the constitutional right to confront and cross-examine one's accusers." *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004).

The brevity of Thompson's testimony did not prevent it from violating Defendant's rights. "To the contrary, it would be an unreasonable application of the core Confrontation

Clause principle underlying *Crawford* to allow police officers to testify to the substance of an unavailable witness's testimonial statements as long as they do so descriptively rather than verbatim or in detail." *Ocampo v. Vail*, 649 F.3d 1098, 1109 (9th Cir. 2011). Indeed, a brief description might be even more harmful to *Crawford*'s principle than a verbatim recitation. "With the language actually used by the out-of-court witness obscured, any clues to its truthfulness provided by that language—contradictions, hesitations, and other clues often used to test credibility—are lost, and instead, a veneer of objectivity conveyed." *Id.*

The parties dispute what level of error would require reversal here. Defendant argues for harmless error, while the government argues that plain error applies because Defendant failed to renew his objection to Thompson's testimony. We need not resolve the parties' dispute because the error is harmless even under the more lenient standard of harmless error.

## 2. *Harmlessness*

Assuming, as we do, that harmless error applies, the government bears the burden of proving beyond a reasonable doubt that an error was harmless. *United States v. Esparza*, 791 F.3d 1067, 1074 (9th Cir. 2015). To assess whether Thompson's testimony was harmless, we must consider "a variety of factors, including whether the testimony was cumulative, the presence or absence of [evidence] corroborating or contradicting the testimony on material points, the extent of cross-examination, and of course, the overall strength of the prosecution's case." *Tuyet Thi-Bach Nguyen*, 565 F.3d at 675 (quoting *United States v. Mayfield*, 189 F.3d 895, 906 (9th Cir. 1999)). But we cannot consider

"whether the witness' testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation." *Id.* (quoting *Coy v. Iowa*, 487 U.S. 1012, 1021–22 (1988)).

Here, Defendant spontaneously confessed to possessing the gun by telling Chavez that he did not intend to use it, but wanted only to sell it or give it away. And the detectives found the shotgun in Defendant's locked minivan, after they observed Defendant entering and exiting the van right next to the spot where the shotgun rested on the floor. The evidence differed with respect to the ammunition: Defendant did not confess to owning the ammunition, it did not match the shotgun, and it was found in a common area of the house rather than in Defendant's locked vehicle. Indeed, the jury's decision to acquit on the ammunition charge shows that it likely did not rely on the landlord's statement, because both Thompson and the government, in closing argument, stated that the landlord said that Defendant possessed the gun *and* the ammunition. In sum, the testimony was harmless beyond a reasonable doubt.

**AFFIRMED.**