**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee*,

v.

TYRONE DAVIS,
          *Defendant-Appellant.*

No. 19-10066

D.C. No.
2:12-cr-00289-
JCM-PAL-1

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Submitted December 6, 2021[*]
San Francisco, California

Filed May 13, 2022

Before: Carlos F. Lucero,[**] Sandra S. Ikuta, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge Lucero;
Concurrence by Judge VanDyke

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Carlos F. Lucero, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

## SUMMARY***

### Criminal Law

The panel affirmed Tyrone Davis' conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), vacated his sentence, and remanded for resentencing.

Following entry of Davis' guilty plea and his two sentencing proceedings, the Supreme Court clarified in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), that to be a felon in possession of a firearm in violation of § 922(g)(1), a defendant must know that they belonged to the relevant category of persons barred from possessing a firearm.

Davis made two arguments in light of *Rehaif*:

- He argued that the government's failure to list the knowledge of status element in his indictment should invalidate his conviction. The panel held that Davis, who had been incarcerated for more than three years for his prior felony convictions and pointed to nothing in the record suggesting that he would have entered a different plea but for the indictment's deficiency, failed to satisfy the third and fourth prongs of plain error review.

- He argued that the district court's failure to advise him of the knowledge of status element during the

---

*** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

plea colloquy rendered his guilty plea unconstitutionally involuntary and unknowing. The panel concluded that there was no plain error requiring reversal, where none of Davis' confusion was related to the elements of the § 922(g)(1) charge, this court already determined in a prior memorandum disposition that his plea was constitutionally valid despite any confusion, and the record contains indisputable evidence of prior felony convictions.

Davis also argued that the district court improperly applied a sentence enhancement pursuant to U.S.S.G. § 2K2.1(a) on the ground that his prior Nevada conviction under N.R.S. § 453.337 for possession with intent to sell marijuana constituted a conviction for a "controlled substance offense" under U.S.S.G. § 4B1.2(b). Following briefing, the parties notified the court that under *United States v. Bautista*, 989 F.3d 698 (9th Cir. 2021) (holding that a conviction for attempted transportation of marijuana under Arizona law was facially overbroad and not a categorical match for a "controlled substance offense"), Davis' predicate conviction is not sufficient to trigger the enhancement. The panel deferred to the government's concession, declining to decide whether *Bautista* controls.

Judge VanDyke, joined by Judge Ikuta, concurred. He joined the majority opinion in full because the government conceded that *Bautista* controls and Davis should be resentenced without his 2011 marijuana conviction constituting a controlled substance offense. He wrote separately to explain why that concession was unnecessary, why *Bautista* does not control this case, and why this court should be careful not to rely on *Bautista* in a way that renders impotent the realistic probability test outlined by the

Supreme Court, thus unnecessarily piling more problems on top of the already problematic categorical approach.

## COUNSEL

Michael Tanaka, Los Angeles, California, for Defendant-Appellant.

Christopher Chiou, Acting United States Attorney; Elizabeth O. White, Appellate Chief; Adam Flake, Assistant United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

## OPINION

LUCERO, Circuit Judge:

Tyrone Davis appeals his conviction and sentence for being a felon in possession of a firearm. He contends that the government and district court's failure to advise him of an essential element of that offense should invalidate his conviction and guilty plea. Davis further argues, and the government concedes, that the district court improperly applied a sentence enhancement based on a prior drug-related offense. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm Davis' conviction, vacate his sentence, and remand for resentencing.

## I

On July 19, 2012, detectives from the Las Vegas Metropolitan Police Department searched Davis' apartment in connection with an ongoing robbery investigation. Detectives discovered a .22 caliber automatic pistol,

89 rounds of ammunition, and approximately ten grams of cocaine. Although he was never prosecuted for the robbery, Davis was arrested and charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(a)(i).

After rejecting several offers from the government, Davis ultimately entered a guilty plea on all charges the morning his trial was set to begin. During his change of plea hearing, Davis repeatedly evinced confusion about the charges against him and the consequences of pleading guilty, including possible sentences. Following an extensive colloquy and consultation between Davis and his attorney, the district court accepted the guilty plea as knowing and voluntary. Two weeks later, however, Davis moved pro se to dismiss his attorney and withdraw his plea. The court appointed new counsel, who filed a second motion to withdraw the guilty plea. Both motions to withdraw the plea were denied, and the district court imposed a 260-month term of incarceration.

Davis then filed his first appeal, raising several challenges to his conviction and sentence. This court affirmed his conviction, specifically finding that his guilty plea was knowing and voluntary because any confusion Davis expressed during his change of plea hearing was resolved through consultation with his attorney and the sentencing judge. *United States v. Davis*, 744 F. App'x 490, 491 (9th Cir. 2018). However, we vacated and remanded his sentence because the district court improperly sentenced Davis as a career offender on the mistaken theory that Davis' prior conviction for robbery constituted a "crime of

violence" for purposes of the United States Sentencing Guidelines ("U.S.S.G."). *Id.* at 492; *see also* U.S.S.G. § 4B1.2. On remand, the district court sentenced Davis to 165 months in prison.

This appeal followed. Initially, Davis filed a pro se brief arguing that his convictions violated the Double Jeopardy Clause. *See* U.S. CONST. amend. V. We rejected that contention but identified a separate arguable issue for appellate review: whether the district court erroneously concluded that Davis' prior drug-related conviction under Nevada law qualified as a "controlled substance offense," which triggers a sentence enhancement under federal guidelines. *See* U.S.S.G. §§ 2K2.1(a)(4)(A), 4B1.2(b).[1] We appointed new counsel and directed the parties to address this sentencing issue.

Following that order, the Supreme Court held in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), that in order to commit the offense of being a felon in possession of a firearm, a defendant must know both that they "possessed a firearm" and that they "belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200. In addition to briefing the sentencing issue raised by this court, Davis challenged his conviction on the basis that neither the government nor the district court advised him of the knowledge of status element articulated in *Rehaif.* These are the issues we consider today.

After the completion of briefing and shortly before argument was scheduled to take place, the parties agreed that

---

[1] On June 6, 2011, Davis was convicted for a felony violation of N.R.S. § 453.337, which prohibits the possession with intent to sell certain controlled substances.

an intervening decision of this court requires vacatur and remand of Davis' sentence. *See United States v. Bautista*, 989 F.3d 698 (9th Cir. 2021). We ordered supplemental briefing in light of this agreement, directing the parties to address *Bautista*'s applicability to this case.

## II

We begin by addressing Davis' conviction. Following entry of his guilty plea and both sentencing proceedings, the Supreme Court clarified in *Rehaif* that to be a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), a defendant must know that they "belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. Davis argues that: (1) the government's failure to list this knowledge of status element in his indictment should invalidate his conviction; and (2) the district court's failure to advise him of this element during the plea colloquy rendered his guilty plea unconstitutionally involuntary and unknowing. However, for the reasons outlined below, our precedents foreclose both arguments.

## A

Beginning with the indictment, it is axiomatic that "an indictment or information which does not set forth each and every element of the offense fails to allege an offense against the United States." *United States v. Morrison*, 536 F.2d 286, 287 (9th Cir. 1976). This principle applies to implied, necessary elements not included on the face of a statute. *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999). On this basis, Davis initially argued that his indictment's failure to enumerate the knowledge of status element deprived the district court of jurisdiction over his § 922(g)(1) charge.

In his reply brief, however, Davis concedes that pursuant to intervening caselaw, his post-trial challenge to the indictment's omission of the *Rehaif* element is not a jurisdictional issue, but rather subject to plain error review. *See United States v. Qazi*, 975 F.3d 989, 992 (9th Cir. 2020). "On plain error review, reversal is warranted only if (1) there was error; (2) it was plain; (3) it affected the defendant's substantial rights; and (4) viewed in the context of the entire trial, the impropriety seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Tuan Ngoc Luong*, 965 F.3d 973, 987 (9th Cir. 2020) (internal citation and quotation omitted). To show that a plain error implicates substantial rights after pleading guilty, a "defendant must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Bain*, 925 F.3d 1172, 1178 (9th Cir. 2019) (internal citation and quotation omitted). Defendants carry the burden of establishing plain error. *United States v. Dominguez-Benitez*, 542 U.S. 74, 82 (2004).

This court has held that an indictment's failure to allege the *Rehaif* knowledge of status element satisfies the first two prongs of our plain error inquiry. *United States v. Benamor*, 937 F.3d 1182, 1188 (9th Cir. 2019). However, Davis fails to satisfy the third and fourth prongs. He points to nothing in the record suggesting that he would have entered a different plea but for the indictment's deficiency. *See Bain*, 925 F.3d at 1178. Because Davis had been incarcerated for more than three years for his prior felony convictions, it defies common sense to suggest that he was unaware of his felon status at the time he possessed the firearm at issue. *See Greer v. United States*, 141 S. Ct. 2090, 2097 (2021) ("In a felon-in-possession case where the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb in trying to satisfy the substantial-rights prong

of the plain-error test based on an argument that he did not know he was a felon. The reason is simple: If a person is a felon, he ordinarily knows he is a felon."). Therefore, Davis has not established that his indictment's failure to list the knowledge of status element is plain error requiring reversal.

**B**

We turn next to the plea colloquy. The U.S. Constitution requires that a guilty plea be entered voluntarily and intelligently. *Bousley v. United States*, 523 U.S. 614, 618 (1998). This standard requires that a defendant understands the essential elements of each charge prior to entering a guilty plea. *Id.* at 618–19. Davis contends that because the district court failed to advise him of the knowledge of status element during his change of plea hearing, his guilty plea was not entered intelligently and was thus unconstitutional. Although the parties initially disputed the applicable standard of review, the Supreme Court has since clarified that omission of a *Rehaif* element during a plea colloquy is reviewed for plain error. *Greer*, 141 S. Ct. at 2100. Thus, we apply the same plain error framework described above.

Again, the district court's failure to include the knowledge of status element in its plea colloquy satisfies the first two prongs of our plain error inquiry. *Benamor*, 937 F.3d at 1188. And again, Davis fails to show that this error implicates substantial rights. *See Bain*, 925 F.3d at 1178. He points to evidence in the record that he evinced confusion and equivocation about pleading guilty before, during, and after his plea colloquy. However, none of Davis' confusion was related to elements of the § 922(g)(1) charge, and this court has already determined that his plea was constitutionally valid despite any confusion. *See Davis*, 744 F. App'x at 491. Moreover, when the record contains indisputable evidence of prior felony convictions, as is true

in this case, a trial court's omission of the knowledge of status element during the plea colloquy generally does not implicate substantial rights. *Benamor*, 937 F.3d at 1189; *Greer*, 141 S. Ct. at 2097. We therefore conclude that the district court's failure to recount the knowledge of status element during the plea colloquy was not plain error requiring reversal.

*** 

Because the *Rehaif* omissions in both Davis' indictment and plea colloquy do not satisfy plain error review, we affirm his conviction for being a felon in possession of a firearm in violation of § 922(g)(1).

**III**

Finally, we address Davis' 165-month sentence. Federal sentencing guidelines call for a six-point sentence enhancement for defendants that have a previous conviction for a "controlled substance offense." *See* U.S.S.G. §§ 2K2.1(a), 4B1.2(b). The district court concluded that Davis' 2011 conviction for possession with intent to sell marijuana in violation of N.R.S. § 453.337 constitutes a "controlled substance offense" and thus applied the enhancement. Ordinarily, to qualify for this enhancement, a state law may only proscribe possession of drugs that are included in the federal Controlled Substances Act ("CSA"). *United States v. Leal-Vega*, 680 F.3d 1160, 1167 (9th Cir. 2012).

The parties initially disputed whether N.R.S. § 453.337 is broader than corresponding federal law, and thus whether the district court properly applied the "controlled substance offense" enhancement. However, following briefing, the parties notified the court that under our recent decision in

*Bautista*, they agree that Davis' predicate conviction is not sufficient to trigger the sentence enhancement. In *Bautista*, this court found that "[b]ecause the federal CSA excludes hemp but Section 13-3405 of the Arizona Revised Statutes did not," a defendant's conviction for attempted transportation of marijuana under Arizona law was "facially overbroad and not a categorical match for a 'controlled substance offense,' and the district court erred in applying the recidivist sentencing enhancement for a controlled substance." *Bautista*, 989 F.3d at 705. Specifically, the relevant Arizona law defined "'marijuana' as 'all parts of any plant of the genus cannabis, . . . whether growing or not, and the seeds of such plant.'" *Id.* (quoting Ariz. Rev. Stat. § 13-3401(19)). As a result, the panel concluded that the Arizona law was broader than the federal offense. *Id.* The parties agree that this logic applies to the Nevada law at issue in this case.

We need not decide whether *Bautista* controls. Rather, we defer to the government's concession on the sentencing issue. Specifically, the government has twice declined to defend imposition of the "controlled substance offense" enhancement. Under such circumstances, we decline to decide a question of law that is not presented by the parties, particularly when the government has made a concession in a criminal case. *Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."); *see also United States v. LaBonte*, 520 U.S. 751, 761–62 (1997) (comparing prosecutorial discretion to seek an enhanced sentence with their absolute discretion over charging decisions, noting that "[s]uch discretion is an integral feature of the criminal justice system"); *United States v. Banuelos-Rodriguez*, 215 F.3d 969, 975–77 (9th Cir. 2000) (en banc)

(acknowledging the role of prosecutorial discretion in sentencing). Accordingly, based on the government's concession, we vacate Davis' sentence and remand for resentencing without the "controlled substance offense" enhancement.

## IV

For the foregoing reasons, we **AFFIRM** Davis' conviction, **VACATE** his sentence, and **REMAND** for resentencing. The government's motion to supplement the record is **DENIED** as moot.

---

VANDYKE, Circuit Judge, with whom Judge IKUTA joins, concurring:

I join the majority opinion in full because the government conceded that *Bautista* controls and Davis should be resentenced without his 2011 marijuana conviction constituting a controlled substance offense. I write separately, however, to explain why that concession was unnecessary, why *Bautista* does not control this case, and why we should be careful not to rely on *Bautista* in a way that renders impotent the realistic probability test outlined by the Supreme Court, *see Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007), thus unnecessarily piling more problems on top of the already problematic categorical approach.

## I. *Bautista*'s Analysis of an Arizona Statute Does Not Control the Nevada Statute at Issue Here.

In *Bautista*, a panel of this court held that an Arizona state law conviction for the attempted transportation of

marijuana was not a controlled substance offense because it determined that Arizona's definition of "marijuana" was broader than the federal definition (which, at the time of the defendant's federal sentencing, excluded hemp).[1] *United States v. Bautista*, 989 F.3d 698, 705 (9th Cir. 2021). *Bautista*'s categorical analysis does not control in this case for several reasons.[2]

First, Arizona's statute encompassed a wider range of cannabis in its definition of marijuana than Nevada's statute. The Arizona definition included nearly every part of the cannabis plant, excluding only its sterilized seed and mature stalk. A.R.S. § 13-3401(19). By contrast, the marijuana definition referenced by N.R.S. § 453.337 is explicitly limited to "hallucinogenic substances," and explicitly *excludes* "industrial hemp"—i.e., certain cannabis with a THC-concentration of not more than 0.3 percent. N.A.C. § 453.510(4); N.R.S. §§ 453.096, 557.040.[3]

---

[1] The Agriculture Improvement Act, Pub. L. 115-334, § 12619, 132 Stat. 4490, 5018 (2018) (excluding, as of December 20, 2018, "hemp" from the definition of marihuana in the Controlled Substances Act, 21 U.S.C. § 801, et seq.); 7 U.S.C. § 1639o(1) (defining hemp as "the plant cannabis sativa L. and any part of that plant . . . with a delta-9 tetrahydrocannabinol [*THC*] concentration of *not more than 0.3 percent on a dry weight basis*") (emphasis added).

[2] *Bautista* also determined that courts "must compare [a defendant]'s prior state-law conviction with federal law at the time of his federal sentencing . . ." *Bautista*, 989 F.3d at 704. That conclusion does control in this case, which is why the majority opinion and this concurrence focus on the federal and Nevada definitions of marijuana as they existed in 2019, when Davis was federally sentenced.

[3] As the defendant pointed out in *Bautista*, Arizona also had history of prosecuting hemp possession under other statutes and had

Second, *Bautista*'s applicability to other statutes is also limited because it did not address the Supreme Court's realistic probability test, leaving that issue open for future panels to consider in the appropriate context. *Bautista* seems to have assumed, by relying on the Arizona statute's *silence* as to hemp and not its *explicit* text, that the Arizona statute was broader than its federal counterpart. Right or wrong, *Bautista* is obviously precedent as to the specific Arizona statute considered in that case. But I do not think *Bautista* must be read so broadly as to imply that the federal hemp-exclusion automatically renders all state convictions involving marijuana overbroad and therefore a categorical mismatch to the federal generic controlled substance offense unless the state definition happens to align precisely with the new federal definition. As discussed more below, such a reading of *Bautista* would eviscerate the Supreme Court's realistic probability test. Here, for example, even though the relevant state and federal definitions of marijuana were not mirror images of each other, there was no meaningful difference between them at the time of Davis's federal sentencing. If anything, Nevada's definition of marijuana (explicitly limited to "hallucinogenic substances") appears to be *narrower* than the federal definition (explicitly limited to THC concentrations that exceed 0.3 percent).[4]

All of this is to say that in a future case involving a different statute than the Arizona offense considered in *Bautista*, where the issue is raised by a party and properly

criminalized unlicensed hemp transportation as drug trafficking. Bautista Reply Br., 2020 WL 2501311, at 11–13. Here, the court is unaware of (and the parties have not provided) any instance in which Nevada prosecuted hemp-related conduct in the relevant time frame.

[4] *Compare* N.A.C. § 453.510(4) *with* 7 U.S.C. § 1639o(1).

contested by the government, we may not merely assume a categorical mismatch simply because a state crime does not explicitly exclude hemp from its definition of marijuana, while the federal definition does.  Instead, we should follow the Supreme Court's instruction to apply the "realistic probability" test to any argument that a state conviction involving marijuana is not a federal controlled substance offense.  *See Duenas-Alvarez*, 549 U.S. at 193; *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013).

## II.  N.R.S. § 453.337 is a Controlled Substance Offense.

If the government had not conceded the issue, I would conclude that Davis's sentence was properly enhanced under U.S.S.G. § 2K2.1(a)(4)(A) as a controlled substance offense (defined by U.S.S.G. § 4B1.2(b)), because there is no realistic probability that the Nevada statute Davis was convicted under would ever be applied against hemp.

To prevail under the categorical approach and show that his sentence was wrongly enhanced, Davis must demonstrate that N.R.S. § 453.337 is broader than its federal counterpart and therefore not a controlled substance offense. Under the categorical approach, we must determine: (1) whether the Nevada statute encompasses more conduct (or substances) than its federal counterpart (i.e., nongeneric conduct); and (2) even if it arguably encompasses nongeneric conduct, whether there is genuinely a "realistic probability" that Nevada would prosecute such conduct.  *See Cortes-Maldonado v. Barr*, 978 F.3d 643, 648 (9th Cir. 2020) (citations omitted).[5]  Importantly, the Supreme Court

---

[5] Here, the nongeneric conduct that Davis claims the Nevada statute encompasses is possession of hemp (i.e., marijuana with a THC-concentration below 0.3 percent).

has made clear that judges should not rely on mere hypotheticals or speculation when evaluating whether there is a "realistic probability" that the state statute would actually be applied to the nongeneric conduct. *Duenas-Alvarez*, 549 U.S. at 193 (holding that "to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires . . . a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime"); *Moncrieffe*, 569 U.S. at 191 (explaining that "our focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense . . . .") (quoting *Duenas-Alvarez*, 549 U.S. at 193).

Our circuit has held that the realistic probability test can be satisfied in one of two ways: (1) with a prior instance of prosecution for the alleged conduct; or (2) by showing that the state statute is "explicitly" or "evident[ly]" broader than its federal counterpart. *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1009–10 (9th Cir. 2015) (explaining that when a "state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime") (quoting *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc), *abrogated on other grounds by United States v. Stitt*, 139 S. Ct. 399 (2018)); *United States v. Vidal*, 504 F.3d 1072, 1082 (9th Cir. 2007) (en banc) ("[W]hen '[t]he state statute's greater breadth is evident from its text,' a defendant may rely on the statutory language to establish the statute as overly inclusive.") (quoting *Grisel*, 488 F.3d at 850).

Even though Davis was given an opportunity in supplemental briefing, he was unable to provide a single instance of prosecution for the nongeneric conduct that he claims the Nevada statute encompasses. Accordingly, Davis is left with needing to show that Nevada's statutory text is *explicitly* or *evidently* broader than its federal counterpart. *Grisel*, 488 F.3d at 850; *Vidal*, 504 F.3d at 1082. In other words, the textual mismatch cannot be lurking in the shadows or indeterminacies of a given statute—it must be plainly obvious from an ordinary reading of the text.

It is of course possible, as Davis points out, that a state statute could create a realistic probability of prosecution for hemp possession even if there is no instance of actual prosecution. For example, if Nevada had *explicitly* defined marijuana to *include* all kinds of hemp or substances with THC-concentrations below 0.3 percent, there would be a realistic probability of prosecution for possessing those substances—even without an example of prior prosecution. But this case is different from those where the text itself reveals a categorical mismatch, because here any theoretical mismatch arguably lies in what the Nevada statute *does not* say or what it *implies* by its silence as to certain low-THC substances. *Compare, e.g.*, *Grisel*, 488 F.3d at 850 (finding a categorical mismatch because Oregon's burglary statute was broader than the federal crime because it *explicitly included* entrance into places like booths, vehicles, boats, and aircrafts that were *explicitly excluded* from the federal definition); *Vidal*, 504 F.3d at 1082 (finding a categorical mismatch because the state statute *explicitly extended* to an "accessory" of vehicle-theft and the federal counterpart *explicitly eliminated* accessories before the fact).

Essentially, Davis is asking that we imply the criminalization of certain substances based on the Nevada

statute's silence—an argument we have rejected in other cases. Where a federal statute explicitly excluded certain conduct or substances from its reach, we have held that a state statute's mere silence as to a parallel exception is not enough to demonstrate an explicit textual mismatch. *United States v. Burgos-Ortega*, 777 F.3d 1047, 1054–55 (9th Cir. 2015) ("These cases [*Grisel* and *Vidal*] are distinguishable because the state statute here does not *expressly* include conduct not covered by the generic offense, but rather is *silent* as to the existence of a parallel administering exception.") (emphasis added); *United States v. Vega-Ortiz*, 822 F.3d 1031, 1036 (9th Cir. 2016) (finding state statute "not 'overbroad on its face'" because it lacked a parallel exception for "L-meth" that was present in the federal definition).

The rationale from *Burgos-Ortega* and *Vega-Ortiz* applies with full force here. Nevada's 2019 definition of marijuana explicitly excluded industrial hemp (cannabis with a THC-concentration of 0.3 percent or less) grown in accordance with chapter 557. N.R.S. §§ 453.096, 557.040. But *at most*, the statute was silent as to whether hemp *not* "grown or cultivated pursuant to the provisions of chapter 557" constituted marijuana. N.A.C. § 453.510(4).[6] A categorical mismatch does not automatically result just because arguably a state statute impliedly covers more conduct or controlled substances than its federal counterpart. *See Burgos-Ortega*, 777 F.3d at 1054–55; *Vega-Ortiz*, 822 F.3d at 1036. Instead, this is where the realistic probability test takes center stage and requires an example

---

[6] Nevada's statute is not actually silent, however. The schedule's explicit limitation to "hallucinogenic substances" seems to indicate that *all* low-THC substances would not constitute marijuana. N.R.S. § 453.096.

of prior prosecution since the text is not explicitly or evidently overbroad.[7]  Just like the defendant in *Burgos-Ortega*, Davis argues that prosecution under the statute for hemp possession is theoretically possible, but he is unable to show how that theoretical overbreadth is supported by the explicit text of the state statute.  *See Burgos-Ortega*, 777 F.3d at 1054–55.

Legal imagination alone cannot create a realistic probability of prosecution, which is all Davis has offered to support his argument that the Nevada statute *could* technically cover *some* hemp possession.  Take for example a hypothetical state statute that criminalized carjacking but had never been applied against someone who stole a 1972 Pinto with tinted windows and a towing hitch.  It takes no legal imagination to see that an individual would still face a realistic probability of prosecution for stealing a 1972 Pinto under the explicit text of the carjacking statute.  On the other hand, it does require a robust legal imagination to conclude that the statute could *technically* cover stealing a toy matchbox or radio-controlled car, because some overeager prosecutor might argue they qualify as "cars" under the statute.  The statutory text cannot be read in a vacuum detached from reality—and that is precisely what would be

---

[7] *See id.*; *see also United States v. House*, — F.4th —, 2022 WL 1123809, at *12 (9th Cir. 2022) (Christen, J., concurring) ("This is why, even when a state statute sweeps in more conduct or controlled substances, the complete [categorical] analysis includes the reality check the Supreme Court introduced in *Duenas-Alvarez* to determine whether there is a realistic probability a state would prosecute the possession or distribution of a particular controlled substance.  This step can be particularly illuminating in cases involving impliedly overbroad statutes.").

required to find a realistic probability of a carjacking prosecution for snatching someone's matchbox car.

Similarly here, Davis's attorney argues (with no example of prior prosecution) that the Nevada statute *could* be read to encompass the possession of certain low-THC substances like hemp. But just as with the toy car example, such a reading would require us to accept the very "legal imagination" the Supreme Court has warned us not to rely on in determining whether a realistic probability of prosecution for the nongeneric conduct has been established. *Duenas-Alvarez*, 549 U.S. at 193; *Moncrieffe*, 569 U.S. at 191. Imaginative arguments about what nongeneric conduct could technically be prosecuted under a state statute are not enough to defeat the categorical comparison. *See, e.g.*, *Burgos-Ortega*, 777 F.3d at 1054–55; *Vega-Ortiz*, 822 F.3d at 1036.