FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. ISAAC DANIEL BAUTISTA, *Defendant-Appellant.* | No. 19-10448 D.C. No. 4:18-cr-01683- RM-DTF-1 ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the District of Arizona
Rosemary Márquez, District Judge, Presiding

Argued and Submitted September 18, 2020
San Francisco, California

Filed November 23, 2020
Amended December 11, 2020
Amended February 26, 2021

Before: Mary M. Schroeder, William A. Fletcher, and
Danielle J. Hunsaker, Circuit Judges.

Order;
Opinion by Judge W. Fletcher

## SUMMARY[*]

### Criminal Law

The panel filed (1) an order withdrawing an opinion filed November 23, 2020 (previously amended on December 11, 2020); and (2) an amended opinion reversing the district court's application of a recidivist sentencing enhancement under U.S.S.G. § 4B1.2(b), and remanding for resentencing, in a case in which the defendant was convicted of possession of ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The district court applied the enhancement on the ground that the defendant's prior state conviction for attempted transportation of marijuana under Arizona Revised Statutes § 13-3405(A)(4) qualified as a "controlled substance offense."

The Arizona statute under which the defendant was convicted included hemp in its definition of marijuana. In 2018, before the defendant's federal conviction, Congress amended the Controlled Substances Act to exclude hemp from its definition of a controlled substance. Reviewing for plain error, the panel held that because the federal Controlled Substances Act in effect at the time of the defendant's federal sentencing excluded hemp, the defendant's Arizona conviction is facially overbroad and not a categorical match. The panel held that the district court therefore plainly erred in applying the § 4B1.2(b) enhancement. The panel concluded

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that the error affected the defendant's substantial rights, and if uncorrected would seriously affect the fairness, integrity, or public reputation of judicial proceedings.

## COUNSEL

J. Ryan Moore (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender, Tucson, Arizona; for Defendant-Appellant.

Angela W. Woolridge (argued), Assistant United States Attorney; Christina M. Cabanillas, Deputy Appellate Chief; Michael Bailey, United States Attorney; United States Attorney's Office, Tucson, Arizona; for Plaintiff-Appellee.

## ORDER

The opinion filed November 23, 2020, and previously amended on December 11, 2020, and reported at 982 F.3d 563, is amended, and is replaced by the amended opinion filed with this order.

With the opinion as amended, the panel votes to deny the petition for rehearing, filed by appellee on December 21, 2020 (Dkt. Entry 32). The petition for rehearing is **DENIED**.

No further petitions for rehearing or rehearing en banc will be entertained.

**OPINION**

W. FLETCHER, Circuit Judge:

Isaac Daniel Bautista appeals a sentence imposed following his conviction of possession of ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Bautista contends that the district court erred in applying a recidivist sentencing enhancement based on his prior state conviction for attempted transportation of marijuana under Arizona Revised Statutes § 13-3405(A)(4). He contends that it was not a conviction for a "controlled substance offense" under § 4B1.2(b) of the U.S. Sentencing Guidelines ("Guidelines"). The Arizona statute under which Bautista was convicted included hemp in its definition of marijuana. However, in 2018, before Bautista's federal conviction, Congress amended the Controlled Substances Act to exclude hemp from its definition of a controlled substance. Thus, in 2019, when Bautista was sentenced in this case, the Arizona statute under which he had been convicted was overbroad and that conviction no longer qualified as a "controlled substance offense" under the Guidelines. We reverse and remand for resentencing.

## I. Factual and Procedural Background

On May 8, 2018, authorities arrested Bautista on an outstanding warrant for a probation violation. When Bautista was booked into the county jail, authorities discovered a pen in his pocket containing one round of .22 caliber ammunition. Bautista was indicted in federal court for possession of ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). After a two-day trial, the jury returned a verdict of guilty.

Under the Guidelines, Bautista would have normally received a Base Offense Level of 14 for the offense, as he was a prohibited possessor. *See* U.S.S.G. § 2K2.1(a)(6). But in the Presentencing Investigation Report ("PSR"), the probation officer concluded that Bautista's 2017 state conviction for "Attempted Unlawful Transportation of Marijuana for Sale," in violation of Arizona Revised Statutes § 13-3405(A)(4), qualified as a "controlled substance offense" as defined in § 4B1.2(b). This recidivist enhancement resulted in a six-level increase to a Base Offense Level of 20. *See* U.S.S.G. § 2K2.1(a)(4)(A).

Bautista objected to the PSR but argued only that the base offense level should be reduced by two levels because he had accepted responsibility under § 3E1.1. He did not object to the PSR's conclusion that his prior state conviction was a "controlled substance offense" under the Guidelines.

At sentencing, on December 10, 2019, the court relied on the PSR's calculation of a Base Offense Level of 20, but it sustained Bautista's objection and reduced the offense level by two levels for acceptance of responsibility. For Bautista's Total Offense Level of 18 and Criminal History Category III, the Guidelines prescribed an advisory range of 33 to 41 months. *See* U.S.S.G. ch. 5, pt. A. The district court sentenced Bautista to 30 months of imprisonment, three years of supervised release, and a special assessment of $100.

Bautista timely appealed his sentence.

## II. Standard of Review

We review for plain error when a defendant fails to object to a sentencing calculation. *See United States v. Depue*,

912 F.3d 1227, 1232 (9th Cir. 2019) (en banc).  Plain error is "(1) error, (2) that is plain, and (3) that affects substantial rights." *Johnson v. United States*, 520 U.S. 461, 462 (1997). If these three conditions are met, we may exercise our discretion to notice an error that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir. 2005) (en banc).

An error is plain if it is "contrary to the law at the time of appeal." *Id.* (quoting *Johnson*, 520 U.S. at 468).  It affects substantial rights if the defendant can "demonstrate a reasonable probability that [he] would have received a different sentence if the district court had not erred." *Depue*, 912 F.3d at 1234 (quoting *United States v. Joseph*, 716 F.3d 1273, 1280 (9th Cir. 2013)).  With respect to substantial rights, the Supreme Court has held that, "[w]hen a defendant is sentenced under an incorrect Guidelines range[,] . . . the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016).  Finally, an error in calculating the Guidelines range "will in the ordinary case . . . seriously affect the fairness, integrity, or public reputation of judicial proceedings, and thus will warrant relief." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1903 (2018).

## III. Discussion

For a defendant who has violated 18 U.S.C. §§ 922(g)(1) and 924(a)(2), the Guidelines provide for a Base Offense Level of 20 if the offense was committed "subsequent to sustaining one felony conviction of . . . a controlled substance offense."    U.S.S.G.  §  2K2.1(a)(4)(A).    A  "controlled

substance offense" is "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . ." U.S.S.G. § 4B1.2(b).

We have interpreted the term "controlled substance" as used in the Guidelines to mean a substance listed in the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 et seq. *See United States v. Leal-Vega*, 680 F.3d 1160, 1167 (9th Cir. 2012). As we noted in *Leal-Vega*, construing the phrase in the Guidelines to refer to the definition of "controlled substance" in the CSA—rather than to the varying definitions of "controlled substance" in the different states—furthers uniform application of federal sentencing law, thus serving the stated goals of both the Guidelines and the categorical approach. *Id.* at 1166 (citing *Taylor v. United States*, 495 U.S. 575, 589 (1990)). Our case concerns a different provision of the Guidelines than in *Leal-Vega*. We are concerned here with the term "controlled substance" in the definition of "controlled substance offense" in § 4B1.2(b) whereas *Leal-Vega* analyzed the term "controlled substance" in the definition of "drug trafficking offense" in § 2L1.2. But we regard this distinction, and the slight differences in the drafting histories of the two Guideline provisions, as immaterial. The relevant text in the two provisions is identical. And there is no meaningful way to distinguish the uniformity-in-federal-sentencing rationale that we adopted in *Leal-Vega*, which compels the conclusion that "controlled substance" in § 4B1.2(b) refers to a "controlled substance" as defined in the CSA. *Accord United States v. Townsend*, 897 F.3d 66, 71 (2d Cir. 2018); *see also United States v. Gomez-Alvarez*, 781 F.3d 787, 794 (5th Cir. 2015); *United States v. Sanchez-Garcia*, 642 F.3d 658, 661–62 (8th Cir.

2011).  *But see United States v. Ward*, 972 F.3d 364, 369–74 (4th Cir. 2020); *United States v. Ruth*, 966 F.3d 642, 651–55 (7th Cir. 2020); *United States v. Sheffey*, 818 F. App'x 513, 519–20 (6th Cir. 2020).

In imposing a sentence, the district court must consider the sentencing guidelines range "that . . . [is] in effect on the date the defendant is sentenced."      18 U.S.C. § 3553(a)(4)(A)(ii).  The Guidelines provide that a court must use the manual that is "in effect on the date that the defendant is sentenced," unless it would violate the Ex Post Facto Clause.  *See* U.S.S.G. § 1B1.11; *see also Peugh v. United States*, 569 U.S. 530, 544–45 (2013) (holding that the Ex Post Facto Clause is violated when a change to the Guidelines adopted after the instant offense was committed results in an *increased* sentencing range).  Bautista's case poses no Ex Post Facto concerns because applying federal law at the time of sentencing results in a lower, not higher, sentencing range.  Thus, a court must ask whether Bautista's prior crime qualifies as a "controlled substance offense" under the CSA and the corresponding Guideline *at the time of sentencing.*

Relying on *McNeill v. United States*, 563 U.S. 816 (2011), the government argues that Bautista's crime must be compared to federal law at the time of the prior state conviction.  The government misreads *McNeill*.  At issue in *McNeill* was a statutory federal sentencing enhancement for a prior state drug conviction where "a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).  The Court held that the relevant term of imprisonment was the term prescribed by state law at the time of the state-law conviction rather than at the time of sentencing for the federal crime.  The Court explained that it made little sense to analyze a prior state-law conviction under

subsequent state law: "[T]he culpability and dangerousness that [a criminal] history demonstrates[ ]does not cease to exist when a State reformulates its criminal statutes in a way that prevents precise translation of the old conviction into the new statutes." *McNeill*, 563 U.S. at 823. The government insists that *McNeill* requires us to disregard the present-tense text of 18 U.S.C. § 3553 and U.S.S.G. § 1B1.11, and to apply the rationale of *McNeill* to the case now before us.

We disagree with the government. Bautista's argument bears little resemblance to the argument in *McNeill*. Unlike in *McNeill*, the state law in our case has not changed. Rather, federal law has changed. The question before us is whether the sentencing court should determine the relevance of Bautista's prior state conviction under the federal sentencing law that exists at the time of sentencing or under federal sentencing law that no longer exists. *McNeill* nowhere implies that the court must ignore current federal law and turn to a superseded version of the United States Code. Indeed, it would be illogical to conclude that federal sentencing law attaches "culpability and dangerousness" to an act that, at the time of sentencing, Congress has concluded is *not* culpable and dangerous. Such a view would prevent amendments to federal criminal law from affecting federal sentencing and would hamper Congress' ability to revise federal criminal law.

Our conclusion also serves the goal of uniformity in federal sentencing law. Applying superseded versions of the United States Code depending on when in the past a defendant committed an identical state crime would cause the very sentencing disparities Congress has repeatedly stated it intends to avoid. *See* 18 U.S.C. § 3553(a)(6) (instructing judges of "the need to avoid unwarranted sentence disparities

among defendants with similar records"); 28 U.S.C.
§ 991(b)(1)(B) (stating that the Sentencing Commission must
set policies to "avoid[] unwarranted sentencing disparities
among defendants with similar records"). By applying
current federal law, we avoid this obvious problem.

We note that we have recently held that, in determining
whether a lawful permanent resident is removable based on
a prior state-law conviction, the question is whether the state-
law crime was a categorical match *at the time of conviction*.
*See Medina-Rodriguez v. Barr*, 979 F.3d 738, 746–49 (9th
Cir. 2020). However, that holding was limited to removal in
the immigration context. *See id.* at 749. We based our
decision in *Medina-Rodriguez* on a Supreme Court opinion
concerning non-citizen removal, on our reading of the
immigration statutes, and on the policy importance of
disclosure of the then-understood immigration consequences
to defendants considering a guilty plea to the state-law
charge. None of those considerations apply here. As
discussed above, it is clear that the issue at sentencing is the
nature of the prior state-law crime under federal law at the
time of sentencing rather than at the time of the prior state-
law conviction.

Having determined that we must compare Bautista's prior
state-law conviction with federal law at the time of his federal
sentencing, we now apply the categorical approach to
determine whether the prior conviction qualified as a
"controlled substance offense" under the Guidelines. *United
States v. Brown*, 879 F.3d 1043, 1047–48 (9th Cir. 2018).
Under the categorical approach, we do not analyze the
underlying facts of a conviction, but rather the elements of
the state crime, which we then compare to the elements of the
generic offense. *See Descamps v. United States*, 570 U.S.

254 (2013). If a state statute expressly defines the crime more broadly than the generic federal offense, there is no categorical match. *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1147 (9th Cir. 2020); *accord United States v. Vidal*, 504 F.3d 1072, 1082 (9th Cir. 2007) (en banc), *abrogated on other grounds as recognized in Cardozo-Arias v. Holder*, 495 F. App'x 790, 792 n.1 (9th Cir. 2012). A state drug statute is therefore categorically overbroad if it includes substances other than those listed in the federal CSA. *Leal-Vega*, 680 F.3d at 1167.

Both marijuana and hemp are plants of the *Cannabis sativa* species, but they differ dramatically in the quantity of the psychoactive substance THC, or delta-9 tetrahydrocannabinol, that they contain. Unlike marijuana, hemp contains "only a trace amount of the THC contained in marijuana varieties grown for psychoactive use." *Hemp Indus. Ass'n v. DEA*, 357 F.3d 1012, 1013 n.2 (9th Cir. 2004).

Prior to 2018, the federal CSA defined "marihuana" to include hemp. The statutory definition included "all parts of the plant Cannabis sativa L." except certain minor components such as the mature stalks of the plant and sterilized seeds incapable of germination. *See* 21 U.S.C. § 802(16) (2012). Because hemp is a *Cannabis sativa* plant, the CSA's definition of marijuana included hemp. *See, e.g.*, *Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082, 1085 n.2 (9th Cir. 2003).

On December 20, 2018, the President signed into law the Agriculture Improvement Act, Pub. L. 115-334, 132 Stat. 4490. The Act removed "hemp" from the schedule of controlled substances, specifying that "[t]he term 'marihuana' does not include—(i) hemp, as defined in section 1639o of

Title 7." 21 U.S.C. § 802(16); *see also* § 12619, 132 Stat. at 5018. Section 1639o defines hemp as "the plant Cannabis sativa L. and any part of that plant . . . with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1); *see also* § 10113, 132 Stat. at 4908.

Bautista was convicted in 2017 of "Attempted Unlawful Transportation of Marijuana for Sale" under Arizona law. The substantive crime was (and is) defined as "knowingly . . . transport[ing] for sale . . . marijuana." Ariz. Rev. Stat. § 13-3405(A)(4). Arizona law defines "marijuana" as "all parts of any plant of the genus cannabis, . . . whether growing or not, and the seeds of such plant." *Id.* § 13-3401(19). The definition excluded only "the mature stalks of such plant or the sterilized seed of such plant which is incapable of germination." *Id.* Arizona's law contains no textual exclusions for hemp or for cannabis plants of a low THC concentration.

At federal sentencing, the district judge was required to compare the elements of the state crime as they existed when Bautista was convicted of that offense to those of the crime as defined in federal law at the time of federal sentencing—that is, after the Agriculture Improvement Act removed hemp from the federal drug schedule. Because the federal CSA excludes hemp but Section 13-3405 of the Arizona Revised Statutes did not, the latter crime's "greater breadth is evident from its text." *See Vidal*, 504 F.3d at 1082. Bautista's conviction is facially overbroad and not a categorical match for a "controlled substance offense," and the district court erred in applying the recidivist sentencing enhancement for a controlled substance.

We conclude that the district court's application of the six-level recidivist enhancement was plain error. It was contrary to law and affected Bautista's substantial rights. An error in the Guidelines range "most often [is] sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez*, 136 S. Ct. at 1345. If the district court again applies a two-level reduction, it will arrive at a Total Offense Level of 12 and a Guidelines range of only 15 to 21 months—less than half of the range of 33 to 41 months under which Bautista was sentenced. U.S.S.G. ch. 5, pt. A. Because allowing this error to go uncorrected would "seriously affect the fairness, integrity, or public reputation of judicial proceedings," we exercise our discretion to grant relief. *Rosales-Mireles*, 138 S. Ct. at 1903.

**REVERSED and REMANDED.**