**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 16 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-30048 |
| Plaintiff-Appellee, | D.C. No. 1:18-cr-00118-SPW-1 |
| v. | |
| DARRELL FRANKLIN HOLLIDAY, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Montana
Susan P. Watters, District Judge, Presiding

Argued and Submitted March 3, 2021
Portland, Oregon

Before: PAEZ and WATFORD, Circuit Judges, and TUNHEIM,[**] District Judge.
Dissent by Judge WATFORD

Defendant-Appellant Darrell Franklin Holliday appeals his sentence for

possession with intent to distribute methamphetamine, and for distribution of

methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Holliday challenges only

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable John R. Tunheim, Chief United States District Judge
for the District of Minnesota, sitting by designation.

the district court's determination that he qualified as a "career offender" under U.S.S.G. § 4B1.1. We have jurisdiction under 28 U.S.C. § 1291. Reviewing de novo, *United States v. Mitchell*, 624 F.3d 1023, 1026 (9th Cir. 2010), we reverse and remand for resentencing.

1.      Holliday argues that the career offender enhancement does not apply because his prior state conviction for violating Mont. Code Ann. § 45-9-101 (2004) is not a "controlled substance offense" under U.S.S.G. §§ 4B1.1 and 4B1.2. We agree.

We "apply the categorical approach to determine whether the prior conviction qualified as a 'controlled substance offense' under the Guidelines." *United States v. Bautista*, 989 F.3d 698, 704 (9th Cir. 2021). In doing so, "we must compare [Holliday]'s prior state-law conviction with federal law at the time of his federal sentencing." *Id.*

Montana's relevant drug schedules are "categorically overbroad" because they "include[] substances other than those listed in the federal [Controlled Substances Act]." *Id.* The Montana schedules include cocaine derivatives, Mont. Code Ann. § 50-32-224(1)(d), while the federal statutory drug schedules do not, *see* 21 U.S.C. § 812(c) Schedule II(a)(4).[1]

---

[1] Because the Montana schedules are facially overbroad when compared with both the federal statutory schedules and the federal regulatory schedules, we need not decide which federal schedules are the appropriate comparator.

2

The Montana schedules are also overbroad when compared with the federal regulatory drug schedules. The federal regulatory schedules were recently amended to specifically exclude "ioflupane" from the list of cocaine-related substances. 21 C.F.R. § 1308.12(b)(4). Prior to the amendment, "[$^{123}$I]ioflupane was, by definition, a schedule II controlled substance because it is derived from cocaine via ecgonine, both of which are schedule II controlled substances." Schedules of Controlled Substances: Removal of [$^{123}$I]Ioflupane from Schedule II of the Controlled Substances Act, 80 Fed. Reg. 54715-01 (Sept. 11, 2015). The Montana schedules, on the other hand, include "cocaine and ecgonine and their . . . derivatives" without any exception for ioflupane. Mont. Code Ann. § 50-32-224(1)(d). Thus, § 50-32-224(1)(d)'s overbreadth "is evident from its text." *See Bautista*, 989 F.3d at 705 (citation omitted). We therefore consider whether the "modified categorical approach" is applicable. *United States v. Barragan*, 871 F.3d 689, 714 (9th Cir. 2017) (citation omitted).

"Courts may use the modified categorical approach only when a statute is divisible—i.e., lists multiple, alternative *elements*, and so effectively creates several different crimes." *Id.* (citation and internal quotation marks omitted). Holliday and the government dispute the extent to which Mont. Code Ann. § 45-9-

3

101 and the incorporated Montana drug schedules are divisible.[2]

Assuming the categories of drugs listed in Mont. Code Ann. § 50-32-224's various subsections are alternative elements, rather than alternative means, we agree with Holliday that the subsections themselves are not divisible. *Cf. Tejeda v. Barr*, 960 F.3d 1184, 1185 n.1, 1187 (9th Cir. 2020) (per curiam) (determining that petitioner was convicted of using "amphetamines" where the state statute criminalized "[a]mphetamine, its salts, optical isomers, and salts of its optical isomers"). In other words, the varieties of cocaine included in Mont. Code Ann. § 50-32-224(1)(d) are alternative means of committing a single crime, not alternative elements of separate crimes. *See United States v. Murillo-Alvarado*, 876 F.3d 1022, 1026 (9th Cir. 2017). The government has produced no evidence to the contrary. *United States v. Allen*, 434 F.3d 1166, 1173 (9th Cir. 2006) ("In general, 'the burden of proof falls on the party seeking to adjust the offense level.'" (citation omitted)).

Under the modified approach, we next "examine judicially noticeable documents of [the] prior conviction to determine whether it is clear which statutory phrase was the basis for the conviction." *Murillo-Alvarado*, 876 F.3d at 1027.

---

[2] Holliday does not dispute that the term "dangerous drug," Mont. Code Ann. § 45-9-101, is divisible with respect to the categories of drugs covered in the Montana drug schedules. We therefore assume that the statute's "dangerous drug" element is divisible.

4

Those documents appear to show that Holliday was convicted of selling "cocaine."[3]

As stated above, the Montana drug schedules are facially overbroad because they include more varieties of cocaine than the federal schedules. Thus, Holliday's conviction for selling cocaine under Mont. Code Ann. § 45-9-101 is not a "controlled substance offense" under the Guidelines. *See Bautista*, 989 F.3d at 705. The district court erred in holding otherwise.

2.      The government argues that Holliday failed to show a "realistic probability" that a person could be convicted for selling ioflupane under Montana law. *See United States v. Vega-Ortiz*, 822 F.3d 1031, 1036 (9th Cir. 2016). Not so. Unlike the state statutes in *Vega-Ortiz* and *United States v. Burgos-Ortega*, 777 F.3d 1047, 1054–55 (9th Cir. 2015), Holliday's prior statute of conviction is overbroad on its face. *See Vega-Ortiz*, 822 F.3d at 1036 ("As in *Burgos-Ortega*, § 11378 is not 'overbroad on its face' . . . ." (citation omitted)); *Bautista*, 989 F.3d at 705 ("Because the federal CSA excludes hemp but [the state statute] did not, the latter crime's 'greater breadth is evident from its text.'" (citation omitted)). And "[a]s long as the application of the statute's express text in the nongeneric manner

---

[3] At this step, Holliday does not dispute whether the documents properly establish that he was convicted of selling cocaine. *See, e.g.*, *Medina-Lara v. Holder*, 771 F.3d 1106, 1113 (9th Cir. 2014). Therefore, the issue is waived. *See* Fed. R. App. P. 28(a)(8)(A).

is not a logical impossibility, the relative likelihood of application to nongeneric conduct is immaterial." *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1147 (9th Cir. 2020). Thus, Holliday has shown a "realistic probability" that his statute of conviction "exceeds the generic definition." *Id.* Holliday's Montana conviction is not a "controlled substance offense" and the career offender enhancement does not apply.[4]

**REVERSED AND REMANDED.**

---

[4] In light of our disposition, we need not address Holliday's alternative arguments.

*United States v. Holliday*, No. 20-30048

WATFORD, Circuit Judge, dissenting:

The majority correctly notes that the federal regulatory definition for cocaine expressly excludes Ioflupane, *see* 21 C.F.R. § 1308.12(b)(4), while Montana's definition implicitly includes it, since Ioflupane qualifies as a "derivative" of cocaine, *see* Mont. Code Ann. § 50-32-224(1)(d). However, rather than decide on this basis that Montana's definition of cocaine is categorically overbroad, I would remand for the district court to determine whether there is a realistic probability that a defendant could be convicted under Montana law for selling Ioflupane. In my view, that determination is required under our court's decision in *United States v. Vega-Ortiz*, 822 F.3d 1031 (9th Cir. 2016).

*Vega-Ortiz* concerned a mismatch between the definition of methamphetamine under federal law and the definition of that substance under California law. Both definitions included "[m]ethamphetamine, its salts, isomers, and salts of its isomers." 21 C.F.R. § 1308.12(d)(2); Cal. Health & Safety Code § 11055(d)(2). But while federal law expressly excluded Levmetamfetamine ("L-meth") from the list of controlled substances, *see* 21 C.F.R. § 1308.22, California law implicitly included L-meth as a methamphetamine isomer. *See Vega-Ortiz*, 822 F.3d at 1035–36. We held that in this situation, the state law was overbroad only if the defendant could show a "realistic probability that he would be

prosecuted under [California law] for possession" of L-meth. *Id.* at 1036.

L-meth in *Vega-Ortiz* is equivalent to Ioflupane here. Federal law expressly excludes that which state law implicitly includes, and in each instance the state law is merely "silent as to the existence of a parallel . . . exception." *United States v. Burgos-Ortega*, 777 F.3d 1047, 1055 (9th Cir. 2015). Accordingly, Montana's definition is overbroad only if there is a realistic probability of prosecution under Montana law for distribution of Ioflupane. I would remand for the district court to make that determination in the first instance.