FILED
United States Court of Appeals
Tenth Circuit

March 6, 2023

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRANDON ROSS WILLIAMS,

    Defendant - Appellant.

No. 22-6021

_____

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:20-CR-00211-PRW-1)**

_____

Laura Deskin, Research and Writing Specialist, (and Jeffrey M. Byers, Federal Public Defender, on the briefs), Oklahoma City, Oklahoma, for Defendant-Appellant.

Danielle Connolly, Assistant United States Attorney, (and Robert J. Troester, United States Attorney, on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

_____

Before **MATHESON**, **KELLY**, and **PHILLIPS**, Circuit Judges.

_____

**KELLY**, Circuit Judge.

_____

Defendant Brandon Ross Williams pled guilty to being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and was sentenced to 180 months' imprisonment. On appeal, he challenges his lengthy sentence as an improper application of the Armed Career Criminal Act (ACCA). He asserts that his two prior Arkansas drug

convictions are not categorically "serious drug offenses" under 18 U.S.C. § 924(e)(2)(A)(ii) because his state convictions could have applied to hemp, and hemp was no longer a federally controlled substance at the time of his federal sentencing. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and we affirm.

Ultimately, this case is all about timing. Specifically, in the context of assessing whether a prior state drug conviction qualifies as a predicate "serious drug offense" under the ACCA, we must resolve the proper time of comparison to determine whether state and federal drug laws are a categorical match. There are two possible approaches: (1) comparing the state drug schedules in effect at the time of Mr. Williams' prior convictions and the federal drug schedules in effect at the time of his federal sentencing ("time of federal sentencing comparison"); and (2) comparing the state drug schedules in effect at the time of Mr. Williams' prior convictions and the federal drug schedules in effect at the time he committed the instant federal offense ("time of federal offense comparison"). See United States v. Gregory Williams, 48 F.4th 1125, 1133 & n.3 (10th Cir. 2022)

For the reasons discussed below, we adopt the time of federal offense comparison. Since there was a categorical match between Arkansas' definition of marijuana at the time of Mr. Williams' prior convictions and the federal definition at the time he committed his federal offense, the district court properly applied the ACCA enhancement.

**Background**

On May 2, 2018, a Dewey County Sheriff's Deputy initiated a traffic stop of Mr. Williams' car after observing two traffic violations.  2 R. 9.  Mr. Williams appeared under the influence, and an inventory search of the car revealed a loaded Glock 27 pistol and a loaded Glock magazine.  Id.

On August 18, 2020, Mr. Williams was indicted for being a felon in possession of a firearm on or about May 3, 2018.  1 R. 11–12.  On November 4, 2021, Mr. Williams pled guilty to the indictment and acknowledged he potentially faced a minimum 15-year sentence pursuant to the ACCA.  Id. 53–65.[1]

The presentence investigation report (PSR) classified Mr. Williams as an armed career criminal and thus subject to an enhanced sentence under 18 U.S.C. § 924(e).  To trigger the ACCA's application, the PSR identified three prior Arkansas convictions for a violent felony or serious drug offense: (1) a 2001 conviction for delivery of marijuana; (2) a 2003 conviction for residential burglary; and (3) a 2003 conviction for possession of marijuana with intent to deliver.  2 R. 10, 13–15.  The enhancement increased the statutory range on his § 922(g) conviction from 0–10 years' imprisonment to 15 years to life imprisonment.  18 U.S.C. § 924(e)(1).

As for the Sentencing Guidelines, the PSR calculated Mr. Williams' initial base offense level as 20 under U.S.S.G. § 2k2.1(a)(4)(A).  The ACCA designation

---

[1] Mr. Williams initially pled guilty on January 28, 2021, but withdrew his plea upon learning he was subject to the ACCA enhancement.  He nonetheless reentered a guilty plea later.

3

increased the offense level to 33 under § 4B1.4(b)(3)(B).  Three levels were then subtracted for acceptance of responsibility under § 3E1.1(a)–(b).  At an offense level of 30 with a criminal history category of IV, the guidelines range was 135 to 168 months' imprisonment.  However, the ACCA's 15-year mandatory minimum increased the guidelines range to 180 months' imprisonment.

Mr. Williams objected to the ACCA designation arguing the 2001 and 2003 Arkansas drug convictions do not qualify as "serious drug offenses" and thus cannot serve as valid predicate offenses under the ACCA.  He argued they do not qualify because the Arkansas drug schedule in effect at the time of his state convictions is categorically overbroad in that it criminalized more substances than did the federal Controlled Substances Act (CSA) in effect at the time of his federal sentencing in 2022.  Specifically, Arkansas included hemp in its definition of marijuana at the time of Mr. Williams' state convictions, see Ark. Code Ann. § 5-64-101 (2001), id. (2002), while the federal CSA has exempted hemp from its definition of marijuana since December 20, 2018.  See Agricultural Improvement Act of 2018, Pub. L. No. 115-334, § 12619, 132 Stat. 4490, 5018; 18 U.S.C. § 802(16) ("The term 'marihuana' does not include . . . hemp.").  Without the ACCA designation, Mr. Williams total offense level would be 17 with a Guidelines range of 37–46 months' imprisonment. 2 R. 33.

The district court overruled the objection.  Relying on United States v. Traywicks, 827 F. App'x 889 (10th Cir. 2020), the district court found that since there was a categorical match between the federal and state drug schedules at the

4

time of the prior state convictions, the convictions qualify as predicate offenses under the ACCA.  3 R. 68–69.  Thus, on January 25, 2022, the district court sentenced Mr. Williams to 180 months' imprisonment.  Id. 89.

## Discussion

As noted, Mr. Williams argues that the ACCA enhancement is improper because his two prior Arkansas drug convictions are categorically broader than the ACCA's definition of "serious drug offense" in effect at the time of his federal sentencing.  After Mr. Williams was sentenced, this court held that "a defendant's prior state conviction is not categorically a 'serious drug offense' under the ACCA if the prior offense included substances not federally controlled at the time of the instant federal offense."  Gregory Williams, 48 F.4th at 1138.  However, we left open "whether the district court looks to the federal definition at the time of the commission of the instant federal offense or at the time of sentencing thereon."  Id. at 1133 n.3.  It was unnecessary to decide that issue because the federal definition of marijuana excluded hemp at both times.  Id.

That is not the case here.  Both parties agree that the application of the ACCA enhancement turns on whether the Arkansas offense is overbroad.  Here, there is a categorical **match** under the time of federal offense comparison such that application of the ACCA is proper, as both the Arkansas state drug schedules in effect in 2001 and 2003 and the federal drug schedules in effect on May 3, 2018 when Mr. Williams committed his federal offense, included hemp.  See Aplt. Br. at 14; Aplee. Br. at 16.  There is a categorical **mismatch** under the time of federal sentencing comparison, as

5

the federal drug schedules excluded hemp pursuant to the 2018 Farm Bill at the time of Mr. Williams' sentencing on January 25, 2022.

The two parties disagree only on which version of the federal drug schedules we must look to in determining categorical overbreadth. The government urges we look at the federal drug schedules in effect when Mr. Williams committed his underlying federal offense. Mr. Williams contends we must look at the federal drug schedules in effect when he was sentenced.

## A. The ACCA

The ACCA imposes a sentence enhancement for being a felon in possession of a firearm for any person who has "three previous convictions . . . for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). Relevant here, the statutory definition of "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the [CSA] (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 924(e)(2)(A)(ii). In turn, 21 U.S.C. § 802(6) states a "controlled substance" is "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter [21 U.S.C §§ 811–14]." We now must determine whether Mr. Williams' prior state drug convictions qualify as serious drug offenses.

## B. Whether Mr. Williams was properly subjected to an enhanced sentence under the ACCA

We review de novo whether a prior state conviction qualifies as an ACCA

predicate offense.  Gregory Williams, 48 F.4th at 1137.  To determine whether a prior state drug conviction qualifies as a serious drug offense, we employ the categorical approach.  See United States v. Cantu, 964 F.3d 924, 926–27 (10th Cir. 2020).  "Under the categorical approach, a state drug offense that includes non-federally controlled substances is overbroad and thus not categorically a 'serious drug offense.'"  Gregory Williams, 48 F.4th at 1137.

1. **In employing the categorical approach, circuit courts have employed different approaches to resolve the embedded timing issue**

In employing the categorical approach, the circuits have taken a variety of approaches regarding which version of drug schedules apply.  Only one other circuit has addressed the precise issue presented here.  Instead, the circuit debates have largely concerned whether a court should compare state and federal law as it existed at the time of the prior state conviction (time of prior state conviction comparison) or compare past state law with some version of current federal law.

As noted, this court adopted the time of federal offense comparison, albeit leaving open the specific issue we must answer.  Gregory Williams, 48 F.4th at 1133 & n.3.  We relied in part on holdings of the First and Ninth Circuits that courts must look to the federal drug schedules in effect at the time of federal sentencing to determine whether a prior conviction is a "controlled substance offense" within the meaning of the Sentencing Guidelines.  See United States v. Abdulaziz, 998 F.3d 519, 531 (1st Cir. 2021); United States v. Bautista, 989 F.3d 698, 703 (9th Cir. 2021).  Those cases of course addressed this timing question in the context of the Guidelines

7

and not the ACCA — an important distinction.  Such a distinction is important as those circuits found the term "controlled substance" under U.S.S.G. § 4B1.2(b) to be limited to substances listed in the federal CSA, Bautista, 989 F.3d at 702; Abdulaziz, 998 F.3d at 529, whereas this court has found that the meaning of "controlled substance" in the Guidelines is not so limited.  United States v. Jones, 15 F.4th 1288, 1294 (10th Cir. 2021).  Moreover, those cases were deciding whether to employ a time of federal sentencing or time of prior state conviction comparison.  A time of federal offense comparison was never considered.

In the ACCA context, the Fourth Circuit held courts must compare federal law in effect at the time of federal sentencing with the state law in effect at the time of state sentencing for the prior convictions.  See United States v. Hope, 28 F.4th 487, 504–05 (4th Cir. 2022).  Thus, the Fourth Circuit adopted the time of federal sentencing comparison.  The court based its decision on the fact that "the Sentencing Guidelines require that a district court use the manual that is 'in effect on the date that the defendant is sentenced . . . .'"  Id. at 505 (quoting U.S.S.G. § 1B1.11).  While it appears adopting the time of federal sentencing comparison as opposed to the time of federal offense comparison would have been outcome determinative (like Mr. Williams, the defendant in Hope committed his crime prior to the 2018 Farm Bill but was sentenced afterward, and argued overbreadth based on the 2018 Farm Bill's exclusion of hemp) the Fourth Circuit also presented its resolution as a dispute between whether to employ the time of federal sentencing comparison or time of prior state conviction comparison.  Id. at 492–93, 504–05.

8

Next, the Eighth Circuit held that under the ACCA, "the categorical approach requires comparison of the state drug schedule at the time of the prior state offense to the federal schedule at the time of the federal offense." United States v. Perez, 46 F.4th 691, 700 (8th Cir. 2022). Thus, the Eighth Circuit adopted the time of federal offense comparison. However, it appears the court was not required to decide whether to consult federal law at the time of the federal offense or federal sentencing.[2] Instead, it was confronted with whether to use the federal definition at the time of the prior state conviction or a more current definition. Id. at 699–700. The court in Perez rooted its decision in due process and fair notice considerations stating that consulting the federal drug schedule in force at the time of the federal offense ensures that a defendant has notice of whether his prior convictions could affect the penalty he faces for the underlying federal offense. Id. Interestingly, Perez employed a different comparative approach under the Guidelines, holding that "whether a prior state conviction is a controlled substance offense for Guidelines purposes is based on the law at the time of conviction, without reference to current

---

[2] This understanding of Perez is reinforced by some imprecise language in the court's holding. After deciding the relevant timeframe is the "time of the federal offense," the Eighth Circuit went on to state that "[w]hether a previous state conviction is a serious drug offense only becomes salient at the time of sentencing . . . . Therefore, the federal law in effect at the time of the federal sentencing is the relevant definition for ACCA purposes." Id. While Perez sends mixed signals concerning the timing issue, it unequivocally applied the relevant drug definition at the time of the federal offense—2019—even though the defendant was sentenced in 2021, and thus employed the time of federal offense comparison. Id. at 696–97, 699–700.

state law."[3]  Id. at 703 (emphasis added).  The Eighth Circuit like our circuit has found that the term "controlled substance," is not limited to those substances listed in the federal CSA.  Id. at 702.

Next, the Third Circuit explicitly parted ways with the Fourth Circuit's decision in Hope and held "that courts must look to the federal law in effect when the defendant committed the federal offense."  United States v. Brown, 47 F.4th 147, 153 (3d Cir. 2022).  Most importantly, the Third Circuit appears to be the only circuit presented with the precise issue this court faces — whether to adopt the time of federal offense comparison or the time of federal sentencing comparison.  Cf. Hope, 28 F.4th at 504–05 (discussing why it employed a time of federal sentencing comparison as opposed to a time of prior state conviction comparison).

The Third Circuit's decision to adopt the federal offense approach was guided in part by the federal saving statute, which provides that the "repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide."  1 U.S.C. § 109.  Under the saving statute, "penalties are 'incurred' under the older statute when an offender becomes subject to them, i.e., commits the underlying

---

[3] On the same day that Perez was issued, the Sixth Circuit, in the context of the Guidelines' career offender enhancement — U.S.S.G. § 4B1.1(a) — and to determine the meaning of "controlled substance offense" under U.S.S.G. § 4B1.2 adopted a time of prior state conviction comparison and held courts must consult "the drug schedules in place at the time of the prior conviction" not the drug schedules in place at the time of instant federal sentencing.  United States v. Clark, 46 F.4th 404, 408 (6th Cir. 2022).

conduct that makes the offender liable." Dorsey v. United States, 567 U.S. 260, 272 (2012). The Third Circuit determined that the 2018 Farm Bill effected a repeal within the meaning of the saving statute given that it changed the definition of marijuana and thereby indirectly affected federal penalties associated with prior serious drug offenses. Brown, 47 F.4th at 151. Moreover, since the defendant committed the offense prior to the effective date of the 2018 Farm Bill, the defendant incurred his penalties at that time, when there was still a categorical match for purposes of the ACCA. Id. at 151–52. Lastly, the court determined the 2018 Farm Bill did not make the new definition of marijuana retroactive and therefore did not disturb application of the federal saving statute. Id. at 152–53.

The Third Circuit distinguished the Supreme Court's decision in Dorsey, which addressed a similar timing issue. 567 U.S. 260. In Dorsey, the Court considered whether lighter sentencing penalties for crack cocaine introduced by the Fair Sentencing Act of 2010 should apply to offenders who committed their offense prior to the Act's passage. 567 U.S. at 264. There, the Court found pre-Act offenders were entitled to the lesser penalties because the Act incorporated a background sentencing principle embodied in the Sentencing Reform Act of 1984 that courts apply the Guidelines in effect on the date of sentencing. Id. at 275. In contrast, the Third Circuit found that nothing in the 2018 Farm Bill implies retroactive application of newer versions of the federal drug schedule nor does it direct courts to look to the background sentencing principle embodied in the Sentencing Reform Act. Brown, 47 F.4th at 152.

11

Additionally, in reaching its conclusion, the Third Circuit noted that applying the time of federal offense comparison best comports with fair notice principles as it allows a defendant to know whether his prior convictions constitute serious drug offenses when he commits the underlying federal offense. Id. at 153. Moreover, it reasoned that applying federal law at the time of federal sentencing would lead to significant and arbitrary sentencing disparities. Id. While the court acknowledged all line-drawing creates some degree of arbitrariness, it concluded that any resulting disparity ought to be rooted in a defendant's voluntary conduct, as opposed to when that defendant is sentenced, which can be affected by countless considerations beyond the defendant's control.[4] Id. Thus, the defendant in Brown was properly subjected to the ACCA's enhanced penalties because there was a categorical match between the federal and state definition of marijuana at the time he committed his federal offense even though there was a subsequent mismatch caused by the 2018 Farm Bill when he was sentenced. Id. at 150–53.

Lastly, we note that the Eleventh Circuit initially adopted the time of federal offense comparison as well. See United States v. Jackson, 36 F.4th 1294, 1297 (11th Cir. 2022) superseded, 55 F.4th 846 (11th Cir. 2022). Much like Perez and Brown, its decision was grounded in the fact "that due-process fair-notice considerations

---

[4] The Third Circuit offered the hypothetical of two defendants violating the same law on the same date in 2016 in identical fashion with identical prior convictions. Id. at 153. However, if one pleaded earlier and was sentenced in 2017, that defendant would be subject to the ACCA whereas the defendant who was sentenced after the 2018 Farm Bill would receive a lighter sentence. Id.

require us" to adopt the time of federal offense comparison. Id. However, the Eleventh Circuit reversed course and adopted the time of prior state conviction comparison holding that approach was required by the Supreme Court's decision in McNeill v. United States, 563 U.S. 816 (2011). See Jackson, 55 F.4th at 855. Thus, in employing the categorical approach the court compared the state drug schedules to the federal drug schedules as they existed at the time of the prior state conviction. Id. at 856. It is worth noting that this court explicitly rejected the contention that McNeill controls which version of federal law courts must consult because McNeill "was discussing a subsequent change in the prior offense of conviction—and not the federal definition to which it is compared." Gregory Williams, 48 F.4th at 1142–43.

For those keeping count, in the ACCA context that makes two circuits adopting the time of federal offense comparison, see Brown, 47 F.4th at 153; Perez, 46 F.4th at 700; one circuit adopting the time of federal sentencing comparison, see Hope, 28 F.4th at 504–05; and one circuit adopting time of prior state conviction comparison—after originally adopting the time of federal offense comparison, see Jackson, 55 F.4th at 855. As for determining whether prior convictions can serve as predicate "controlled substance offenses" under the Guidelines, see U.S.S.G. § 4B1.2, every circuit that limits the definition of "controlled substance" to the federal definition as embodied in the CSA has adopted the time of federal sentencing comparison. See Abdulaziz, 998 F.3d at 531; Bautista, 989 F.3d at 703. By contrast, in circuits that do not define "controlled substance" by reference to the CSA, every circuit to reach the timing question has held that a court only consults the law at the

13

time of the prior state conviction, not current federal or state law.  See Clark, 46

F.4th at 408; Perez, 46 F.4th at 703.  Though the cases on the timing issue are not

entirely uniform, we think that the correct approach is to employ the time of federal

offense comparison.

### 2.  The parties' contentions

Mr. Williams argues the time of federal sentencing comparison is correct

because the "text, history, and purpose of the ACCA all point toward comparing the

state drug schedules at the time of state conviction to current CSA drug schedules."

Aplt. Br. at 15.  Mr. Williams contends that because the text reflects an

understanding that the drug schedules may change, one must apply current federal

law as opposed to older versions.  Id. at 17.  For support, he points out that the term

"controlled substance" is defined as "a drug or other substance, or immediate

precursor, included in schedule I, II, III, IV, or V of part B of this subchapter."  Id. at

15 (citing 21 U.S.C. § 802(6)).  In turn, Part B of the relevant subchapter states that

in addition to these initial five schedules, "[t]he schedules established by this section

shall be updated and republished on a semiannual basis."  Id. at 15–16 (citing 21

U.S.C. § 812(a)).  Moreover, Mr. Williams argues that Congress was aware of the

background principle that we apply the sentencing laws in place on the date of

sentencing when crafting § 924(e)(2)(A)(ii).  Id. at 18 (citing Dorsey, 567 U.S. at

275).

In addition, he urges this court to follow the Fourth Circuit's lead in Hope.  As

discussed, Hope relied on the fact that the Guidelines require courts to use the

14

manual in effect on the date of sentencing.[5]  Lastly, to the extent there is ambiguity, Mr. Williams urges this court to apply the rule of lenity and decide the timing issue in his favor.  Aplt. Br. at 22–23.

In response, the government argues that the federal saving statute resolves the question in its favor.  Aplee. Br. at 13–17.  It argues Mr. Williams incurred his ACCA penalty on the date he committed his offense.  See Dorsey, 567 U.S. at 272.  Moreover, just as the Third Circuit found, it argues the 2018 Farm Bill constitutes a repeal within the meaning of the saving statute as it excluded hemp from the definition of marijuana and thereby indirectly affected federal penalties for marijuana convictions.  See id. (discussing that a repeal occurs when a new statute decreases the penalties under the older statute).  Moreover, it argues, as the Third Circuit found, the 2018 Farm Bill did not express an intent to apply retroactively[6] and, as such, Mr. Williams properly incurred the enhanced ACCA penalties because he committed his underlying offense while hemp was still included in the federal definition of marijuana.

Mr. Williams counters that reliance on the federal saving statute is inapposite.  Aplt. Reply Br. at 2–6.  According to Mr. Williams, the relevant sentencing statute is

---

[5] In fact, Hope directly quoted Bautista, a Guidelines case, which stated "it would be illogical to conclude that federal sentencing law attaches 'culpability and dangerousness' to an act that, at the time of sentencing, Congress has concluded is not culpable and dangerous.  Hope, 28 F.4th at 505 (quoting Bautista, 989 F.3d at 703) (emphasis in original).  According to the Fourth Circuit, such a view would nullify Congress' ability to revise the criminal code.  Id.

[6] Mr. Williams concedes the bill's new definition of marijuana is not retroactive.  Aplt. Reply Br. at 3.

18 U.S.C. § 924(e), and that statute has not been changed by any act of Congress. Moreover, the 2018 Farm Bill did not repeal penalties for marijuana convictions but merely modified the definition of marijuana to exclude hemp. Thus, the saving statute is simply not in play here and it cannot tell us which federal drug schedule to consult in conducting our categorical analysis. Id. at 3. Instead, according to Mr. Williams and as the Fourth Circuit found in Hope, background sentencing principles, utilized in Guidelines cases, require us to consult the federal drug schedule in effect at the date of sentencing.

### 3. Analysis

Mr. Williams' first contention — that the "text, history, and purposes of the ACCA" dictates that we adopt time of federal sentencing comparison — is unavailing. To be sure, the ACCA's definition of "serious drug offense" does reference a schedule that is subject to change. However, that simply does not address which version of that changing drug schedule a court must consult in conducting its categorical analysis. He provides no other textual, historical, or purpose-based arguments.

In addition, Mr. Williams' reliance on the Fourth Circuit's decision in Hope is unpersuasive. Hope relied on Guidelines cases such as Bautista[7] and the Guidelines directive that courts use the manual in effect on the date of sentencing, neither of

---

[7] Indeed Hope mistakenly asserts that Bautista concerned a similar timing issue in the ACCA context. Id. at 505 n.15. The case did not concern the ACCA but rather whether a prior conviction was for a "controlled substance offense" under § 4B1.2(b) of the Guidelines. Bautista, 989 F.3d at 701.

which applies here.  28 F.4th at 505.  As the Third Circuit rightly pointed out, this is not a Guidelines case, but rather a case involving the ACCA, which omits a similar directive requiring courts to use the law in effect at the time of sentencing.  Brown, 47 F.4th at 153–54.  Accordingly, Mr. Williams' argument concerning background sentencing principles embodied in the Guidelines does not overcome the due process and fair notice considerations that ultimately carry the day as discussed below.  To be sure, the cases that have employed the time of federal sentencing comparison for purposes of the Guidelines could be persuasive and favor Mr. Williams' position.  However, Bautista and Abdulaziz are distinctly unpersuasive given that unlike the Tenth Circuit, the First and Ninth Circuits limit the term "controlled substance" in U.S.S.G. § 4B1.2(b) to substances listed in the federal CSA, Bautista, 989 F.3d at 702; Abdulaziz, 998 F.3d at 529.  As for the circuits that have reached this issue but do not so limit the term "controlled substance" like the Tenth Circuit does, see Jones, 15 F.4th at 1294, they have employed a time of prior state conviction comparison.  See Clark, 46 F.4th at 408; Perez, 46 F.4th at 703.  In total, looking to these out-of-circuit cases discussing the timing issue under the Guidelines provides little meaningful guidance.  Thus, we decline to follow Hope, which expressly relied on those cases.

In rejecting Mr. Williams' argument, we instead adopt the time of federal offense comparison as due process and fair notice considerations mandate such an approach.  It is vital that when a defendant commits a federal offense, that defendant is aware of the penalties he faces and the nature of his prior convictions should he

17

have any. See United States v. Johnson, 576 U.S. 591, 595 (2015). Leaving a defendant in limbo until he is sentenced violates this notice requirement. As Judge Hartz noted, applying the federal schedules in effect at the time of the federal offense best comports with fundamental notions of due process. See Cantu, 964 F.3d at 936–37 (Hartz, J., concurring). This court in Gregory Williams embraced this rationale when it chose the time of federal offense as the appropriate reference point. See 48 F.4th at 1142. So too did the Third and Eighth Circuits. See Brown, 47 F.4th at 153 ("[T]his rule gives a defendant notice not only that his conduct violated federal law, but also of his potential minimum and maximum penalty for his violation and whether his prior felony convictions could affect those penalties." (internal quotation omitted)); Perez, 46 F.4th at 699.

In addition, this approach minimizes potential disparities in sentencing. Under Mr. Williams' desired approach, two individuals who violate § 922(g) in identical respects with identical prior convictions could receive different sentences simply because they might be sentenced at different times. See Brown, 47 F.4th at 153. Sentencing dates are affected by a variety of factors including plea negotiations, health concerns, and court schedules. In fact, several years may pass between the commission of an offense and sentencing. See e.g., United States v. Gould, 672 F.3d 930, 933–34 (10th Cir. 2012) (indicating over six years passed between the defendant's commission of his offenses and sentencing thereon).

In light of this troubling potential for disparity, the Third Circuit reasoned, "[i]f penalties are to differ because of an arbitrarily selected date, it seems fairer that

18

the severity of the penalty depend upon the voluntary act of a defendant in choosing the date of his criminal conduct than upon the date of sentencing." Brown, 47 F.4th at 153 (quoting United States v. Reevey, 631 F.3d 110, 114 (3d Cir. 2010)). Of course, we recognize disparities could result from the time of federal offense comparison. However, the approach we adopt makes those disparities less arbitrary as it ties them to a defendant's voluntary act. Moreover, it avoids another problematic aspect inherent in the time of federal sentencing comparison. That approach could incentivize delay (in hopes of a change in the law creating or eliminating a categorical mismatch) to the defendant's or government's advantage.

As for the government's federal saving statute argument and Mr. Williams' dispute of its applicability, we note that Congress did not change the ACCA — the underlying sentencing statute at issue here. Moreover, the 2018 Farm Bill simply excluded hemp from its definition of a controlled substance, it did not repeal penalties for marijuana convictions. What it did do is de-criminalize hemp. The government argues the 2018 Farm Bill set off a chain of events that indirectly affected penalties under the ACCA and as such implicated a statutory change of the ACCA. Given the more direct approach of our disposition, we need not resolve this contention.

Lastly, the rule of lenity does not rescue Mr. Williams' argument. "[T]he rule of lenity applies when a court employs all of the traditional tools of statutory interpretation and, after doing so, concludes that the statute still remains grievously ambiguous, meaning that the court can make no more than a guess as to what the

statute means." Shular v. United States, 140 S. Ct. 779, 789 (2020) (Kavanaugh, J., concurring). First, we are not in a position where we must merely guess which is the correct approach. Instead, we exhaust our tools of statutory interpretation by looking to our own circuit decisions in Cantu and Gregory Williams. In addition, the basis of our decision is rooted in due process and avoiding arbitrary sentencing discrepancies. Second, not a single circuit court when confronted with these timing issues has resorted to the rule of lenity. While that does not prevent us from becoming the first circuit to do so, it demonstrates that our normal tools of interpretation are sufficient, and that the statute is not so "grievously ambiguous." Also, not employing it here comports with the Court's admonition that "the rule of lenity rarely comes into play." Shular, 140 S. Ct. at 788.

Because there was a categorical match between Arkansas' definition of marijuana at the time of Mr. Williams' two prior drug convictions and the federal definition at the time he committed the underlying 922(g) offense, the district court properly applied the ACCA's enhanced penalties.

AFFIRMED.